James F. Richards began working for the Ohio Bureau of Employment Services ("OBES") in May of 1989. He progressed to the position of Fiscal Officer 3 within the Division of Budget and Finance of OBES.
During the summer of 1996, Mr. Richards was repeatedly found to be working on private business during normal business hours. He was using state-owned computers as part of his work on the private business, a business plan for his fiancée. After very clear warnings from Patrick J. Power, the Director of OBES's Division of Budget and Finance, against doing private business on state time, proceedings were begun to terminate Mr. Richards' state employment. The order of removal alleged:
 1. Failure of good behavior, specifically, using your personal computer to type a "business plan" for your fiancée;
 2. Failure of good behavior, specifically, using State time to type a "business plan" for your fiancée;
 3. Insubordination: use of State time and equipment for personal business in violation of specific, written instructions from your supervisor.
Hearings on the order of removal for Mr. Richards were held on March 14, 27 and 31, 1997. The administrative law judge who conducted the hearings on behalf of the State Personnel Board of Review ("SPBR") issued a report on May 20, 1997 in which the administrative law judge recommended that the removal of Mr. Richards be affirmed. The SPBR adopted the report and recommendation of the administrative law judge over written objections filed on behalf of Mr. Richards.
Mr. Richards then pursed an administrative appeal to the Franklin County Court of Common Pleas. That court affirmed the order of removal.
Mr. Richards has now pursued a further appeal, assigning a single error for our consideration:
 The lower court abused its discretion and erred by determining that the State Personnel Board of Review's order is supported by reliable, probative or substantial evidence and is in accordance with law.
The standard of review in administrative cases under R.C.119.12 is clear. Pursuant to R.C. 119.12, a common pleas court may affirm the order of the agency if it finds the order is supported by reliable, probative and substantial evidence and is in accordance with law. Ohio Historical Soc. v. State Emp.Relations Bd. (1993), 66 Ohio St.3d 466, 470. This standard involves two inquiries: a hybrid factual/legal inquiry and a purely legal inquiry. Id.
As to the hybrid factual/legal inquiry, the common pleas court must give deference to the agency's resolution of evidentiary conflicts; however, the agency's findings are by no means conclusive. Id., citing Univ. of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108, 111. Whether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Id. This is, in essence, a legal question. An agency's findings of fact are presumed to be correct and must be deferred to unless the reviewing court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. Ohio Historical Soc. at 471; Conrad at 111-112. A determination that there is a complete lack of evidence to support a finding does not involve a weighing of the evidence.Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc. (1997),118 Ohio App.3d 470, 483.
In reviewing an order of an administrative agency, an appellate court determines only if the trial court has abused its discretion. Rossford Exempted Village School Dist. Bd. ofEdu. v. State Bd. of Edu. (1992), 63 Ohio St.3d 705, 707. However, on questions of law, our review is plenary. Gen.Motors Corp. at 483.
While the removal of Mr. Richards from state service should be a straightforward matter, it is not. The reason that his removal is anything but routine is the fact that OBES has "flex time" rules and rules regarding the use of state computers which make it virtually impossible to prove that anyone is ever doing any private work on state time.
Employees of OBES are permitted to use state computers for private business purposes so long as the work is done on the employee's personal time. Employees of OBES are permitted to take two breaks of fifteen minutes each at any time of the day. Employees are also permitted to take a thirty minute lunch break at any time of the day. Some employees take the two breaks and lunch break all together as a whole hour at the end of the day and leave work an hour early.
The inability of the OBES to enforce any limitation on private work during normal business hours was well understood by the administrative law judge who heard the matter for the SPBR.
He wrote:
 * * * The Ohio Bureau of Employment Services does not prohibit the use of its computers by its employees for personal business so long as the personal business conducted on an OBES computer is not performed on state time. The evidence presented to the record in this proceeding fails to establish by a preponderance that the appellant used his OBES personal computer to type a business plan for his fiancée. The evidence presented also fails to establish by a preponderance that the appellant used state time to type a business plan for his fiancée.
As a result, the administrative law judge and the SPBR did not accept the first two bases set forth as reasons for terminating the employment of Mr. Richards. Those two bases were a failure of good behavior, specifically using state time to type a business plan for Mr. Richards' fiancée.
The only remaining basis for removal of Mr. Richards from state service was "[i]nsubordination: the use of State time and equipment for personal business in violation of specific, written instruction from your supervisor." The administrative law judge and the SPBR affirmed the removal order on this basis alone.
A distinction can be drawn between the entering of the business plan into the computer and working on the business plan after it had been downloaded into the computer. Mr. Richards testified that he downloaded the personal business plan onto his computer while on non-duty time. No one except Mr. Richards testified about the circumstances under which the personal business plan was entered onto the computer — just that the business plan was present, and Mr. Richards seemed to be working on it. Thus, no evidence was presented to weigh against Mr. Richards' testimony about how the plan came to be on the computer in the first place. As a result, the factual finding about the first two branches of the removal order does not automatically prevent a finding that Mr. Richards later worked on the business plan in violation of clear instructions not to do so.
The administrative law judge and the SPBR found that Mr. Richards was in fact working on the business plan on state time, despite the denial of Mr. Richards that he was. In making the factual finding, the administrative law judge and the SPBR relied most heavily upon the testimony of George Ross, an internal auditor with OBES, and apparently a personal friend of Mr. Richards. Mr. Ross, after being instructed to do so by Mr. Power, also prepared a memorandum about his conversation with Mr. Richards. The memorandum was placed in evidence during the hearings about the removal order.
Mr. Ross indicated in his memorandum that during the work week of July 15 through July 19, he had several conversations with Mr. Richards about official matters. However, on July 16, the two of them participated in a training session together. Mr. Richards asked what Mr. Ross knew about preparing a business plan. Mr. Ross indicated that he knew little about business plans, but would keep his eye open for anything that might be helpful. On July 22, Mr. Ross found a magazine with a helpful article which he delivered to Mr. Richards on July 23. On July 24, Mr. Ross found a book which he thought helpful. The book was delivered to Mr. Richards on July 25. Mr. Ross denied doing anything else to assist Mr. Richards with the business plan.
On July 26, some time after 9:00 a.m., Mr. Ross went to Mr. Richards' office to drop off an official document. Mr. Ross found Mr. Richards working on a document which involved the personal business plan. Mr. Richards asked Mr. Ross if Mr. Ross had found anything else of value regarding business plans. About three hours later, Mr. Richards called and asked Mr. Ross a technical question about how to reference documents in a business plan. At some point in time, Mr. Richards also told Mr. Ross that he (Mr. Richards) had received and sent faxes regarding loans and the business plan.
When he testified at the hearing, Mr. Ross indicated in addition that, on July 26, 1996, he was called by Mr. Richards and asked to come to Mr. Richards' office to pick up written revisions of a state policy on use of credit cards for small state purchases. When Mr. Ross arrived, he found Mr. Richards typing on his computer on the personal business plan for the purchase of a motel in South Carolina. After a brief discussion of the credit card policy, Mr. Richards asked Mr. Ross if Mr. Ross had found anything else of value regarding how to format the business plan. Later, the two men began discussing Free Masonry, a fraternal organization. Mr. Power then entered the office and told Mr. Ross that Mr. Ross's supervisor needed to see him. This ended the conversation.
On cross-examination at the hearing, Mr. Ross acknowledged that he had no knowledge of whether Mr. Richards was "on or off the clock," during any of their conversations that day. (Tr. 315.) Upon being questioned by the administrative law judge, Mr. Ross indicated that he could not say whether or not Mr. Richards had been on break during any of their conversations regarding the business plan. However, Mr. Ross assumed that Mr. Richards was on duty because Mr. Ross approached him to discuss the written credit card policy.
Mr. Ross's assumption regarding whether or not Mr. Richards was on state time when Mr. Ross approached does not constitute reliable, probative and substantial evidence that Mr. Rodgers was or was not on duty. As a matter of personal courtesy, Mr. Richards could well have interrupted his break to briefly take up a discussion of the credit card policy rather than have a friend or acquaintance stand waiting for his break to end before engaging in discussion of the policy.
In affirming the removal order for Mr. Richards, the administrative law judge and SPBR also indicated that the testimony of Mr. Power was part of the basis for a finding that Mr. Richards was doing personal work on state time. However, Mr. Power never discussed with Mr. Richards the issue of whether Mr. Richards was using break time or lunch time to do the personal work. Mr. Power was mostly concerned that Mr. Richards was engaging in activity designed ultimately to help Mr. Richards' fiancée make a profit.
Mr. Power also noted the fact that when Mr. Richards was confronted the last time about the issue, Mr. Richards did not affirmatively state that he (Mr. Richards) was on break at the time of the conversation with Mr. Ross.
The failure of Mr. Richards to be confrontational with Mr. Power does not constitute reliable, probative and substantial evidence that Mr. Richards was not on break during the conversations with Mr. Ross.
We can fully appreciate the desire of Mr. Power to terminate Mr. Richards' employment under the circumstances. However, our appreciation of that desire does not permit us to ignore the fact that the burden of proof in any disciplinary action rests upon the appointing authority. See Ohio Adm. Code 124-3-06. Further, the appointing authority must present reliable, probative and substantial evidence to support any disciplinary action, especially a removal from state employment. The appointing authority simply did not show that Mr. Richards was working on state time, as opposed to personal time, when he was working on the personal business plan. The written order from Mr. Power was clearly an order not to do the work on state time. Mr. Richards could not be guilty of insubordination of an order regarding state time with what he did on his personal time. Again, the trial court's function was to determine whether there existed the requisite quantum of evidence. At best, SPBR's finding was based upon an improper inference. As a matter of law, this was improper. There simply did not exist the requisite quantum of evidence to support SPBR's decision.
As a result, we must sustain the assignment of error. We, therefore, reverse the judgment of the trial court and remand the action to the SPBR with instructions to reinstate James F. Richards to his position of Fiscal Officer 3.
Judgment reversed and cause remanded with instructions.
LAZARUS, P.J., and PETREE, J., concur.